FRANKLIN DELANO WIDENER v. JUDY FOX AND JERRY M. FOX

### No. 7121SC390

### (Filed 23 June 1971)

**Automobiles § 83— injury to pedestrian — contributory negligence**
> Testimony by a 26-year-old plaintiff that he ran into the street at such a speed that he was unable to stop until reaching the middle, and that he saw defendant's approaching car but had time to take only two steps back before being struck, *held* to establish the plaintiff's own negligence as a matter of law.

APPEAL by plaintiff from *Armstrong, Judge,* 1 February 1971 Civil Session of Superior Court held in FORSYTH County.

Civil action to recover damages for personal injuries sustained when plaintiff, a 26-year-old pedestrian, was hit by an automobile operated by Judy Fox and owned by her husband, Jerry Fox. The pleadings raised issues of negligence and contributory negligence. Plaintiff appeals from a directed verdict in favor of the defendants.

The evidence shows the following: Plaintiff and Jerry Fox are cousins. About 10 o'clock p.m. on 19 October 1969 plaintiff and a friend arrived at the Fox home for a visit. The home was on the west side of the street and the front of the house was about fifty feet from the edge of the street. The front

yard was covered by a grass lawn and was slightly higher than the street. There was a cinder block retaining wall at the street edge of the front yard, the top of the wall being even with the surface of the yard. When plaintiff and his companion arrived at the Fox residence, they found Jerry Fox and other men present, but Mrs. Judy Fox was not at home at that time. A friendly poker game ensued. About two hours later Mrs. Judy Fox arrived home to find her husband, plaintiff, and two other men playing cards in the kitchen, another man sleeping in her bed, and still another sleeping on the couch. After speaking with her husband, Judy Fox decided to go to her mother's home to spend the night. Shortly after Judy Fox walked out, Jerry Fox jumped up from the table and ran out the door. At that time, about midnight, according to plaintiff:

> "Well, we were sitting there playing cards, and so, where it all took place is that Jerry jumped up from the table and, he then took off out the door, and I didn't know what was going on at the time, and so I thought that he may be in some kind of trouble; that there might be some boys coming over there trying to cause trouble, or something another, because, I mean he took off in such a quick way like that. And so I got up to go out to see if it was anything going on out there. And when I come out, when I seen a car and I seen him running down the street, I mean going towards that car, you know, and he was running, too, and so I took off running, also. And I run out and jumped off of this wall—it's about 2 foot high— I jumped off of the wall to the street. Well, the wall's off—it's right in front of Jerry Fox's house, in other words, where he was living, the wall is. His front yard was even with the top of that wall. And the wall was a retaining wall because the street was lower than his yard. And I jumped off of that, down into the area where the street was. It was a paved street. Well, I'd say that my feet first hit where the sidewalk would be, in other words, and then I was going at such a speed that I couldn't get stopped until I got about middleways of the street.

> "When I got middleways of the street, I saw the car coming up the street. That is not the same direction the car had been going in that I saw Jerry running after. The

car had gone down and turned around, in other words, as far as I know; I mean it must have. . . . ”

\* \* \* \* \*

“ . . . Well, I seen the car coming, and so I was about middleways of the street there; and so I started to come back across this way of the street here, and—I started coming back to my side. Back toward the house. The same side I had come from. Well, I got probably two, three steps maybe, back towards that way. Then I got hit. I got hit by the automobile. I was maybe a foot or two, something like that, I'd say, back toward my side of the street, when I got hit.”

Plaintiff testified he did not know before the car hit him that Judy Fox was the driver, that the car stopped about 25 feet from where he got hit, and that Judy Fox got out and came to him. He also testified that the lights on the car were burning and there was a street light about 25 or 30 feet away. On cross-examination he testified:

“When I came running out of this house, I jumped off this porch and jumped off at a full run—this wall. One foot did not land in the street and the other foot about on the dirt shoulder. One foot hit the dirt first, I know, because I didn't jump as far as into the street. One foot had to hit the dirt first, and then, I mean, the other foot went into the street then. I did not stumble. I did not stumble. Then I ran from that point right in the area of the middle of the street. And then I saw the car approaching.

“I would say I had time enough to move two steps, or about two steps, before I was struck, something like that. So far as the time that elapsed from my getting out into the street and realizing what was taking place and then attempting to get away and then the actual impact, all of that took place in a very short period of time. I would say within a few seconds to a minute, I would say, anyway, something like that. I am not sure. I mean probably around a minute, minute's time, or a minute, something like that. It was just enough time for me to get out there and take the two steps. Back, yes, sir.

“Well, after I seen I couldn't get out of the way, I mean, I tried to jump up on the hood, you know, but I

didn't make it, and the hood or the headlight or something caught this leg. When I say 'this leg', I mean the left leg."

On redirect examination plaintiff testified:

"When I first saw the car, I did not know the car was moving. I didn't pay no attention to it then. I mean I didn't notice whether it was in motion or not. I was more concerned with whether or not Jerry was in some kind of trouble, or something. I believe Mr. Fox was running down toward the car, or running somewhere about the car. He was over on that side of the street over there (indicating), I believe he was. Across the street from his house. I don't remember if he was in the street. I believe he was on the edge of the street. I'm not sure. When I turned around to go back, he was about as far as from here to that door over there (indicating), I'd say, something like that. I would say 30 to 40 feet. The car was near him at that time. It was close to him. I mean it was pretty—real close to him, I mean."

Mrs. Judy Fox testified that the street in front of her house came to a dead end a short distance south of her home; that when she left her house she got in her car, which was parked headed south, and drove south to the second driveway from her home, where she turned around; that as she was coming back up the street, "all of a sudden" her husband was in the road in front of her car; that she made a quick turn to get around her husband; that plaintiff's car was parked in front of her house, partly on the street and partly on the dirt; that she turned back, and "that's when he (the plaintiff) was hit"; that plaintiff was "just a little ways up from his car" and "a little more than a car length" from where she first saw her husband; that the first time she saw the plaintiff was just about the time she hit him; and that she couldn't have been going over 25 miles per hour. She also testified that other cars were parked in the immediate area along the sides and partly on the paved portion of the street.

At the close of all the evidence the court allowed defendant's motion for a directed verdict on the grounds that plaintiff's evidence failed to show actionable negligence and showed contributory negligence on the part of the plaintiff as a matter of law. From judgment dismissing the action, plaintiff appealed.

Widener v. Fox

*White, Crumpler & Pfefferkorn by James G. White and Michael J. Lewis for plaintiff appellant.*

*Allan R. Gitter and Eddie C. Mitchell for defendant appellees.*

*Womble, Carlyle, Sandridge & Rice of counsel for defendant appellees.*

PARKER, Judge.

The evidence in this case, even when considered in the light most favorable to the plaintiff, was insufficient as a matter of law to justify a verdict for the plaintiff. The judgment directing verdict for defendants was therefore proper. *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396. Not only was there insufficient evidence from which the jury could legitimately find actionable negligence on the part of the defendant driver, but plaintiff's own evidence so clearly established his own negligence as a proximate cause of his injuries that no other reasonable inference can be drawn. In the middle of the night a 26-year-old man ran from a house a distance of some fifty feet toward the street, jumped down from a two-foot retaining wall while going at such speed that he was unable to stop until reaching the middle of the street, then saw the car approaching, and had time to take only two steps back before being struck. In our opinion it would be difficult to imagine a more clear-cut case of negligence on the part of a plaintiff. The judgment appealed from is

Affirmed.

Chief Judge MALLARD and Judge VAUGHN concur.